Joe Calvert, BPR 024259
Calvert & Associates
1137 GreeenLea Blvd, B29
Gallatin, Tennessee 37066
1-877-225-8378
615-989-7929
mr.calvert@attorneys-counselors.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JAMES KENTON,<br><br>        Plaintiff,<br><br>  vs.<br><br>WSMV Channel Four ("WSMV") and john does one through ten inclusive being corporate or fictitious names unknown to Plaintiff.<br><br>        Defendants. | Case No.:<br><br>**DEFAMATION**<br><br>**FALSE LIGHT INVASION OF PRIVACY**<br><br>**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**<br><br>**NEGLIGENT HIRING, SUPERVISION, OR RETENTION OF EMPLOYEE**<br><br>**PRIMA FACIE TORT**<br><br>**CIVIL CONSPIRACY**<br><br>**GROSS FRAUD**<br><br>**NEGLIGENCE**<br><br>**GROSS NEGLIGENCE**<br><br>**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |

## DEMAND FOR TRIAL BY JURY

1

# COMPLAINT

Come now James Kenton, an individual by and through his counsel Joe Calvert, Calvert & Associates for his Complaint states the following as fact except for those items designated as upon information and belief alleges the following:

## I. PARTIES

1. Plaintiff is an individual who resides the State of North Carolina.

2. Defendant is an unknown business entity located in the State of Tennessee, Davidson County.

## II. JURISDICTION AND VENUE

3. Federal jurisdiction is pursuant 28 U.S. Code § 1332 on the basis of diversity of citizenship.

4. Supplemental jurisdiction is pursuant to 28 U.S.C. § 1367.

## III. GENERAL FACTUAL ALLEGATIONS

5. That Plaintiff is an individual and no form of business entity.

6. That Plaintiff was arrested on August 21, 2020 for Home Improvement Fraud >$1000 < $2500 pursuant to Tennessee Code 39-14-154.

7. That the charges were dismissed by the State of Tennessee.

8. That the charges were based upon an arrest warrant executed by William Decker Thorowgood

2

.

9. That the arrest warrant contained nine counts of perjury by Detective Thorowgood who designated himself as "Prosecutor."

10. That pursuant to freedom of information and records requests to the Nashville Metropolitan Police Department, Mr. Thorowgood has a history with issues of self-control and that Mr. Thorowgood has been disciplined for his inability to control the words he speaks.

11. That Mr. Thorowgood has an arrest record based upon the absence of self-control, presumably from intoxication.

12. That upon information and believe Mr. Thorowgood recruited or conspired with the Defendant's employee Caresse Jackman to cover his crimes and literally create fake news.

13. That at a hearing on October 8, 202 in Davidson County, Tennessee General Sessions Court Criminal Division Defendant brought herself and a camera crew to cover a false claim against Plaintiff for $1190.00.

14. That Ms. Jackman interviewed Mr. Kenton's counsel on and off camera.

15. That upon speaking with Ms. Jackman Plaintiff's counsel advised her that she was reporting the wrong story and Ms. Jackman refused to do any research or due diligence to substantiate her publications.

3

16. That counsel informed her that the real story was about Detective Thorogood's false arrest and possible local police corruption to which she responded to wit: "you threatened to sue me."

17. That upon information and belief Ms. Jackman's sought to maliciously punish the Plaintiff to deter civil or criminal liability and bolster her career.

18. That Ms. Jackman falsely reported " owner of Mt. Juliet Company" arrested for home improvement fraud.

19. The allegation was published on a tangible fixed medium of expression both in writing and on video and remains displayed on the internet.

20. The publication of the alleged allegations were displayed on television and fixed in print on Defendant's website.

21. That Defendant published that the Plaintiff was the owner of "Tennessee Metal Roofing Company."

22. That there is no Tennessee Metal Roofing Company, which Ms. Jackman failed to verify before publishing her news reports. **Exhibit A**

4

23. That there was a corporation named Tennessee Metal Roofing Inc. to which Plaintiff was an independent contractor.

24. That Plaintiff was not the incorporator.

25. That Plaintiff was not a shareholder, officer or director of Tennessee Metal Roofing Inc.

26. That Plaintiff as a matter of law did not have any personal liability for a third-party corporation.

27. That Plaintiff could not be the "owner" of a corporation as a matter of law.

28. That "Law professor Lynn Stout, now of Cornell University, says a corporation is considered by the law to be a person with rights -- and you can't own a person. UCLA law professor Stephen Bainbridge, meanwhile, says a corporation is merely a set of contracts among shareholders, directors, employees and others. "There simply is nothing there that can be owned," he writes. Bainbridge also points out that if shareholders were truly "owners" of the corporation, they could freely use the corporation's assets. Try buying a share of United Airlines stock and then asking to use a plane." *Citation omitted.*

29. That the above paragraph defining corporations and documents in support had previously been delivered to and ignored by Ms. Jackman by electronic mail by Plaintiff's counsel.

5

30. That upon information and belief that Ms. Jackman neither had sufficient education or background to be reporting on a story she could not comprehend.

31. That Ms. Jackman proceeded in her interview with Plaintiff's attorney accusing Plaintiff of establishing JKLT, LLC as a " shell" company.

32. That the innuendo posited published by Ms. Jackman was that Plaintiff created a shell company that was engaging in illegal activities.

33. That on camera and published in the same manner as previously designated in the above paragraphs Plaintiff's counsel specifically asked: "what is a shell company"?

34. That Ms. Jackman did not answer the question that is on film.

35. That upon information and belief Ms. Jackman was without any knowledge as to what constitutes a shell company.

36. That upon information and belief Ms. Jackman was instructed by, or discussed a manner to damage the Plaintiff with Mr. Thorowgood to raise the negative, yet incorrect public perception of a shell company to further damage Plaintiff's business reputation.

37. That a shell corporation is a company that serves as a vehicle for business transactions without having any significant assets or operations. Shell corporations are not illegal and they

6

have legitimate business purposes. They are also known as international business corporations (IBCs), personal investment companies (PICs), front companies, or mailbox companies.

38. That Defendant repeatedly published three similar stories about the Plaintiff on November 5, 2020 containing the same allegations of being the "owner" of a nonexistent roofing company when she was fully aware he was not an owner.

39. That on November 6, 2020 Defendant published a story suggesting that there was fraud in Plaintiff's personal application for a Home Improvement License so he could provide similar services to other companies similar to Tennessee Metal Roofing Inc.

40. That Defendant wrote that there was an "emergency meeting" by THE TENNESSEE BOARD FOR LICENSING CONTRACTORS to suspend his license that is only required in very few counties in the region.

41. That Ms. Jackman published that THE TENNESSEE BOARD FOR LICENSING CONTRACTORS spoke with Mr. Kenton's attorney for an hour.

42. That there was no emergency meeting by THE TENNESSEE BOARD FOR LICENSING CONTRACTORS at any time regarding Mr. Kenton.

43. That Plaintiff's counsel did speak with THE TENNESSEE BOARD FOR LICENSING CONTRACTORS at regularly scheduled meeting.

7

44. That the final outcome was that any charges alleged by THE TENNESSEE BOARD FOR LICENSING CONTRACTORS were dismissed with no finding of fault.

45. That Plaintiff Kenton could not continue to provide services to Tennessee Metal Roofing Inc. resulting from the targeted attack upon him by Defendant and Mr. Thorowgood to terminate his independent contractor status with Tennessee Metal Roofing Inc.

46. That Tennessee Metal Roofing Inc. went out of business.

47. That hundreds of satisfied customers in Tennessee lost their roof warranties because Mr. Kenton could no longer handle any potential problems with the installed roofs on their behalf.

48. That Mr. Kenton was harassed and threatened with bodily harm after the publication of the fake news by Defendant.

49. That Plaintiff had to seek professional assistance and medication by a physician to cope with the targeted attach on him by the Defendant and Mr. Thorowgood.

50. That Plaintiff ultimately had to leave the State of Tennessee.

51. That on November 9, 2020 a demand for retraction within five days was delivered to the defendant by facsimile without any action by Defendant.

52. That on November 10, 2020 a demand for retraction within five days was delivered to the defendant by facsimile without any action by Defendant.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION: COUNT 1

### DEFAMATION

53. Plaintiff repeats the allegations contained in paragraphs one (1) through fifty-two (52) as though set forth verbatim herein without limitation and with full force and effect.

54. Plaintiff would show Defendant communicated a statement that referred to Plaintiff, to-wit: on television on October 8, 2020 and on multiple subsequent dates of publication in writing and on video or film.

55. Plaintiff would show Defendant's statements were made to persons other than Plaintiff, to-wit: on broadcast television and subsequent written publication on the news broadcaster's website.

56. Plaintiff would show that Defendant's statements were defamatory, to-wit: Plaintiff has not been able to maintain his livelihood, provide services to hundreds of homeowners that could potentially need roof warranty services , and force the corporation for whom he provided independent contractor out of business services as a result of the Defendant's public statements and publications.

9

57. Plaintiff would show that Defendant's statements were read in print or heard by members of the public on broadcast television who understood its defamatory meaning and that the statements referred to Plaintiff, to wit: Plaintiff was notified of the statements by other members of the community that contacted it directly to ask him whether he was aware Defendant had published statements that Plaintiff was engaging in fraud and owned a non-existent business entity.

58. Plaintiff would show that Defendant knew its statements were false when they were made, to-wit: Defendant never removed the defamatory statements upon being informed by Plaintiff that Defendant knew the statements were false.

59. Plaintiff would further show Defendant was high degree of awareness that the published statements were false and **as** a direct, legal and proximate cause of the intentional, fraudulent, reckless and malicious acts of the Defendant.

60. That upon information and belief, at the time of the aforesaid publications, the defendant were actuated by actual malice in that the defendant knew that the libelous statements and matters contained therein concerning the plaintiff and its business reputation so published, were false and untrue, or were published with reckless and wanton disregard of whether they were false and untrue.

70. That as a result of the publications and the acts of the defendant in connection therewith, the plaintiff has been held up to professional contempt, ridicule, disgrace, and prejudice; has suffered

10

great mental pain and anguish; and has been irreparably injured his good name, business reputation and goodwill, has suffered direct financial damage, has developed health problems , and has lost the esteem and respect of clients, peers, acquaintances, and business associates.

71. That as a result Plaintiff has been harassed and threatened by bodily injury resulting from the Defendant's actions.

72. That by reason of the foregoing, plaintiff has been greatly injured and damaged, and, is entitled to compensatory and punitive damages against the Defendant, in the sum of $100,000,000.00 (one hundred million and 00/100 dollars).

## **SECOND CAUSE OF ACTION: COUNT 2**

## **TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

73. Plaintiff repeats the allegations contained in paragraphs one (1) through seventy-two (72) as though set forth verbatim herein without limitation and with full force and effect.

74. Defendant was aware of an existing or prospective business relationship with a specific third-party corporation.

75. Defendant had knowledge of that specific relationship and not mere awareness of the Plaintiff's dealing with others in general.

76. Defendant's manifested an intent to cause the breach or termination of the business relationship so that the Plaintiff could no longer provide independent contractor services to the corporation Tennessee Metal Roofing Inc. and its clients.

77. Defendant's invoked improper motive or improper means acting outside the color of law by false publishing that Plaintiff committed a crime and Plaintiff was the owner of a non-existent organization that Defendant named Tennessee Metal Roofing Company.

78. Plaintiff sustained damages resulting from the tortious interference whereas Plaintiff was forced to no longer provide services to the corporation for whom he provided independent contractor services resulting from the public statements and publications of the Defendant.

79. As a direct, legal and proximate cause of the intentional, fraudulent, reckless and malicious acts of Defendant, the Plaintiff is entitled to an award of compensatory and punitive damages in the amount of $50,000,000.00 (fifty million and 00/100 dollars).

## **THIRD CAUSE OF ACTION; COUNT 3**

### **FALSE LIGHT INVASION OF PROPERTY**

80. Plaintiff repeats the allegations contained in paragraphs one (1) through seventy-nine (79) as though set forth verbatim herein without limitation and with full force and effect.

81. Plaintiff claims that Defendant violated his right to privacy whereas:

12

82. That Defendant publicized information or material that showed Plaintiff in a false light;

83. That the false light created by the publication would be highly offensive to a reasonable person in Plaintiff's position;

84. That there is clear and convincing evidence that Defendant knew the publication would create a false impression about Plaintiff or acted with reckless disregard for the Truth in multiple statements including but not limited to ownership of a non-existent company and the creation of JKLT, LLC as being an illegal business entity engaging in unlawful services as a ::shell: company which is neither accurate or illegal;

85. That in the alternative Defendant was negligent in determining the truth of the information or whether a false impression would be created by its publication;

86. That Plaintiff sustained harm and;

87. That Defendant's conduct was a substantial factor in causing Plaintiff's harm and deserves compensatory and punitive damages as to be determined by this honorable Court.

## **FOURTH CAUSE OF ACTION; COUNT 4**

### **NEGLIGENT HIRING, SUPERVISION, OR RETENTION OF EMPLOYEE**

88. Plaintiff repeats the allegations contained in paragraphs one (1) through eighty-seven (87) as though set forth verbatim herein without limitation and with full force and effect.

89. Plaintiff claims that he was harmed directly by Caresse Jackman as an employee of the Defendant and that Defendant is responsible for that harm because Defendant negligently hired, failed to supervise or negligently supervised, and retained Caresse Jackman as an employee.

90. That Defendant hired Caresse Jackman.

91. That Caresse Jackman was unfit, incompetent or improperly educated to perform the work for which she was hired.

92. That Defendant knew or should have known that Caresse Jackman was unfit or incompetent and that this unfitness or incompetence created a particular risk to others including Defendant itself.

93. That Caresse Jackman's unfitness or incompetence harmed Plaintiff; and;

94. That Defendant's negligence in hiring, supervising, or retaining Caresse Jackman was a substantial factor in causing Plaintiff's harm.

95. That Defendant's conduct was a substantial factor in causing Plaintiff's harm and deserves compensatory and punitive damages as to be determined by this honorable Court.

## FIFTH CAUSE OF ACTION: COUNT 5
## PRIMA FACIE TORT

96. Plaintiff repeats the allegations contained in paragraphs one (1) through ninety-five (95) as though set forth verbatim herein without limitation and with full force and effect.

97. That defendant intentionally inflicted of pecuniary harm upon plaintiff when defendant published defamatory and false information of and concerning Plaintiff, interfered with Plaintiff's livelihood and was directly responsible for the termination of Plaintiff's agreement with Tennessee Metal Roofing Inc.

98. That upon information and belief defendant acted with the knowledge and intent to harm the plaintiff.

99. That upon information and belief defendant acted in favor of her own vendetta or personal gain.

100. That plaintiff has sustained damage in an amount of not fewer than $750,000.00 (seven hundred fifty thousand dollars and 00/100) plus the interest, costs, attorneys' fees, and disbursements of this action and any other relief this Court deems just and proper.

## SIXTH CAUSE OF ACTION: COUNT 6

### CIVIL CONSPIRACY

101. Plaintiff repeats the allegations contained in paragraphs one (1) through one hundred (100) as though set forth verbatim herein without limitation and with full force and effect.

102. The Defendant and Detective William Decker Thorowgood formed a conspiracy to perform the unlawful and wrongful acts described herein, and they took overt acts in furtherance of that conspiracy. Among other acts, the Defendants conspired to tortiously interfere with Plaintiff's business relationships, reputation, and interfere with Plaintiff's ability to make a living fulfilling his agreement with corporation Tennessee Metal Roofing Inc.

103. As a direct and proximate result of the Defendant and Detective William Thorowgood conduct in furtherance of the conspiracy, Plaintiff Kenton has suffered and will continue to suffer great harm in an amount to be proven at trial.

## **SEVENTH CAUSE OF ACTION: COUNT 7**

### NEGLIGENCE

104. Plaintiff repeats the allegations contained in paragraphs one (1) through one-hundred-three (103) as though set forth verbatim herein without limitation and with full force and effect.

105.   That defendant owed a duty to plaintiff and the public-at-large, to properly research, conduct due diligence, and verify facts before disseminating and publishing false information otherwise known as fake news.

106. That but for Defendant's negligence breaching its duty as a news agency to Plaintiff. Plaintiff's contract with Tennessee Metal Roofing Inc. would be continuing, Tennessee Metal Roofing Inc. would still be an existing entity and that Plaintiff would continue to receive substantial income therefrom.

16

107. That as a result of Defendant's negligence, plaintiff has been damaged in a currently unascertainable amount of not fewer than $1,000,00.00 (one million and 00/100 dollars).

## EIGHTH CAUSE OF ACTION: COUNT 8

### GROSS NEGLIGENCE

108. Plaintiff repeats the allegations contained in paragraphs one (1) through one-hundred-three (107) as though set forth verbatim herein without limitation and with full force and effect.

109. That defendant owed a duty to plaintiff and the public-at-large, to properly research, conduct due diligence, and verify facts before disseminating and publishing false information otherwise known as fake news.

110. That the defendant acted in reckless disregard of, or with a lack of substantial concern for, the rights of others nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others in causing the loss of their warranties for newly installed roofs.

111. That the Plaintiff and former clients of Tennessee Metal Roofing Inc., both being victims of the actions of the Defendant and co-conspirator, have suffered damages of not fewer than $900,00.00 (nine hundred thousand dollars) or any other amount that this court deems just and proper.

## NINTH CAUSE OF ACTION; COUNT 9

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

112. Plaintiff repeats the allegations contained in paragraphs one (1) through one-hundred-eleven (111) as though set forth verbatim herein without limitation and with full force and effect.

113. That Defendant acted intentionally or recklessly in its reporting of false facts of and concerning the Plaintiff whereas:

114. That Defendant's conduct as unwarranted was extreme and outrageous; and

115. That the conduct of the Defendant was the cause of severe emotional distress to the Plaintiff.

116. That Plaintiff deserves compensatory and punitive damages as to be determined by this honorable Court.

**PRAYER FOR RELIEF**

**WHEREFORE**, James Kenton prays as follows:

1. For legal and actual damages according to proof, including trebled or doubled damages where applicable by law on his causes of action in law and equity for:
    a. the sum of $100,000,000.00 (one hundred million and 00/100 dollars) on the first cause of action;
    b. an award of compensatory and punitive damages in the amount of $50,000,000.00 (fifty million and 00/100 dollars). On the second cause of action;

18

c. compensatory and punitive damages as to be determined by this honorable Court on the third cause of action;

d. compensatory and punitive damages as to be determined by this honorable Court on the fourth cause of action;

e. $750,000.00 (seven hundred fifty thousand dollars and 00/100) plus the interest, costs, attorneys' fees, and disbursements of this action and any other relief this Court deems just and proper on the fifth cause of action;

f. compensatory and punitive damages as to be determined by this honorable Court on the sixth cause of action

g. a currently unascertainable amount of not fewer than $1,000,00.00 (one million and 00/100 dollars) on the seventh cause of action;

h. not fewer than $900,00.00 (nine hundred thousand dollars) or any other amount that this court deems just and proper on the eighth cause of action.

i. compensatory and punitive damages as to be determined by this honorable Court on the ninth cause of action.

2. For exemplary, punitive damages according to the proof and wisdom of this Court or any other relief that this court deems just and proper;

3. That James Kenton recover the costs of his suit including but not limited to fees, costs, disbursements, and statutory attorney's fees;

19

4. That this Court refer this matter to the United States Department of Justice for investigation and putative prosecution for perjury, fraud, and obstruction of justice by William Thorowgood Decker;

5. That this Court Enter such other further relief to which Plaintiff may be entitled as a matter of law or equity, or that the Court determines to be just and proper.

Dated: October 6, 2021

Joe Calvert, BPR # 024259

By:_____

Joe Calvert

To:
WSMV-TV Channel 4 Nashville
5700 Knob Road
Nashville, TN 37209